McKinney, J.,
delivered the opinion of the Court.
This was an action of assumpsit brought by Levick, Brother & Co., on a bill of exchange drawn in their favor by B. H. Badwell, for $803.15, on the firm of C. D. Venable & Co., and purporting to have been accepted by said firm.
The defendants pleaded: First, non-assumpsit; and, secondly, a special plea, on oath, denying the acceptance of said bill. Judgment was for the plaintiffs.
From the bill of exceptions, it appears that C. D. Venable & Co., of which firm B. H; Badwell, the drawer of said bill, was a member — carried on the mercantile business in Henry county, Tennessee. Badwell resided in Angelo in the State of Kentucky, where he carried on a separate, individual mercantile business.
On the 19 th of April, 1855, said Badwell was in the city of Philadelphia, and called at the house of *353 Levick, Brother & Co., merchants of that city, and represented to them that he was a member of the firm of C. D. Yenable & Co., and was buying goods for them. The plaintiffs, thereupon, sold him a bill of goods, amounting to $803.15. The goods were purchased by Badwell, in his individual name, and were so entered on the plaintiff’s books; and were shipped to him at Angelo, Kentucky; the bill of lading was likewise made out in his name. Badwell stated to the clerk of plaintiffs, “that he would prefer to give his own obligation for the bill of goods, but that he was a member of the firm of 0. D. Venable & Co., and as such, was authorized to use the firm name if necessary.” But objection being made to this, Badwell drew the bill of exchange before mentioned, and immediately wrote an ac» ceptance thereof, in the firm name of Venable & Co.
The charge of the Court assumes, that, as Badwell was a member of the firm of Venable & Co., he had authority, as such, to bind the firm for the bill of goods purchased from the plaintiffs, although the purchase was not in the name, or for the use of said firm, but in his own name, and for his individual benefit; unless it were shown that the plaintiffs had knowledge of the fraudulent purpose of Badwell.
This is a mistaken view of the law of the case. It is true, that each partner is the agent of the partnership, and, therefore, the act of each, in transactions properly relating to the partnership business, is regarded as the act of all, and binds all. Each one may enter into any contract, on behalf of the firm, in the ordinary business thereof, which, according to the common course and usages of such partnerships, is incident or *354 appropriate to the business. But it is only in the capacity of an authorized agent of his co-partners, that he has power to bind them. Hence, in order to bind the firm, the act must ordinarily be done in the name of the firm; otherwise, it will only bind the individual partner as his own private act. Story on Part., sec. 102; 3 Kent’s Com., 41, 45; 3 Hum., 209; 1 Hum., 23, 29.
It is certainly correct, as a general proposition, that a sale of goods to one partner, within the scope and course of the partnership business, is, in judgment of law, a sale to the partnership, and the seller of the goods will not be affected by any fraudulent intention of the purchasing partner in buying them, or by his subsequent misapplication of them, if the seller be clear of the imputation of collusion. 3 Kent’s Com., 44. Col-yer on Part., see. 392.
And the same principle applies to negotiable securities drawn, endorsed, accepted, or negotiated by one partner, within the scope and course of dealing of the partnership, in the absence of fraud on the part of the person receiving such securities. But, if goods be sold to one partner on his private account, and for his individual benefit; or, if partnership security be taken from him for a debt which the creditor knew at the time was the private or individual debt of the particular partner, without the previous knowledge or consent of the other partners, it would be a fraudulent transaction as to them, and clearly void. So, if from the subject matter of the contract, or the course of dealing, or the circumstances of the transaction, the creditor' was chargeable with constructive knowledge of the fraudulent purpose, or in *355 tended misapplication on the part of the particular partner, the partnership cannot he made liable. 8 Kent’s Com., 42. If the public have the usual means of knowledge given them in regard to the existence and business of a partnership, and no acts have been done or suffered by the partnership to mislead or deceive, every one is presumed to know the nature and extent of the partnership with whose members he deals; and when a person takes a partnership engagement, without the knowledge or authority of the firm, for a matter that has no reference to the business of the firm, and is not within the scope of its authority, or its regular course of dealing, he is, in judgment of law, guilty of a fraud. 3 Kent, 48.
These principles are decisive of the case before us. The purchase of the goods and the partnership security given for their payment, did not purport to be for the partnership, but for Bad well, as a private individual. And of this fact, from the very nature and circumstances of the transaction, the plaintiffs were chargeable with knowledge. It was the folly and the wrong of the plaintiffs to accept a partnership security for a debt, not created in the name of the firm, or for its benefit, on the faith of the statement by the particular partner, which, prima facie, was untrue, as they were bound to know.
The judgment will be reversed.